VALLEY FAMILY PLANNING, a North Dakota nonprofit corporation, on behalf of itself, and all others similarly situated, Shari Doe, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

The STATE OF NORTH DAKOTA, Arthur A. Link, Individually and as Governor of the State of North Dakota, Dr. Jonathan Weisbuch, Individually and as State Health Officer, Allen Olson, Individually and as Attorney General of the State of North Dakota, Jim Odegard, Individually and as County Attorney of Grand Forks County, their agents, representatives, successors, those acting in concert with them and all others similarly situated, Defendants.

Civ. No. A3–79–87.

United States District Court,
D. North Dakota,
Southeastern Division.

Aug. 16, 1979.

Larry F. Nordick, Legal Assistance of N.D., Inc., Fargo, N.D., Janet L. Benshoof and Judith Levin, American Civil Liberties Union Foundation, New York City, Stephen L. Pevar, American Civil Liberties Union, Mountain States Office, Denver, Colo., for plaintiffs.

David S. Niss, Asst. Atty. Gen., Office of Allen I. Olson, Atty.Gen., Bismarck, N.D., for defendants.

A. R. Hausauer, Jr., Asst. States Atty., Grand Forks, N.D., for Jim T. Odegard, States Atty. of Grand Forks County.

## ORDER

BENSON, Chief Judge.

Plaintiffs in the above-entitled action seek declaratory and injunctive relief against the enforcement of N.D.Cent.Code § 14–02.3–02, a provision of a statute entitled "Abortion Accessibility Restricted," which became effective on April 8, 1979. The challenged section, N.D.Cent.Code § 14–02.3–02, provides:

> No funds of this state or any agency, county, municipality, or any other subdivision thereof and no federal funds passing through the state treasury or a state agency shall be used as family planning funds by any person, public or private agency which performs, refers or encourages abortion.

Any person who violates the Act is subject to criminal liability.

Plaintiffs challenge N.D.Cent.Code § 14–02.3–02 on the ground that it conflicts with the requirements of Title X of the Public Health Service Act and Titles IV, V, XIX and XX of the Social Security Act, and is therefore invalid under the Supremacy Clause of the Constitution. In addition, plaintiffs contend the state statute is violative of several provisions of the Constitution, including the First and Fourteenth Amendment.

The matter is now before the court on plaintiffs' motion for preliminary injunction. A hearing on the motion was held on July 13, 1979.

Plaintiff Valley Family Planning is a private non-profit corporation which provides family planning services. It charges for services on a sliding scale according to each patient's ability to pay. Over 70% of its patients have incomes below the poverty level and receive services without charge. Valley Family Planning receives over 50% of its funding from the federal government under Title X of the Public Health Service Act, 42 U.S.C. § 300 et seq., and Title V of the Social Security Act, 42 U.S.C. § 701 et seq., with the remainder coming from state matching funds and patient files.

Valley Family Planning alleges it has never performed or encouraged abortions, but prior to the effective date of N.D.Cent. Code § 14–02.3–02, its employees provided information on abortion to patients, including lists of names of physicians and clinics who perform abortions and names of other services which could provide further infor-

mation or counseling on abortion. Upon the effective date of N.D.Cent.Code § 14-02.3-02, Valley Family Planning ceased providing such information because it could be viewed as referral for abortion.[1]

Plaintiffs Valley Family Planning and Shari Doe, its executive director, are suing on their own behalf, on behalf of their patients,[2] and on behalf of all other providers of family planning services in North Dakota who receive public funds and who counsel or speak to pregnant women or other persons who speak to pregnant women or other persons seeking information about abortion.

## I. ABSTENTION.

■ Defendants request that this court abstain from any decision on the merits, including ruling on plaintiff's motion for preliminary injunction pending construction of the challenged statute by the North Dakota Supreme Court under its certification procedure, Rule 47, N.D.R.App.P. Defendants contend the state court could place a limited construction on the work "refer" which would moot or at least substantially modify plaintiffs' claims. In support of their abstention request, defendants have submitted affidavits of two employees of the North Dakota State Department of Health. These employees state that they believe the term "refers" as used in N.D. Cent.Code § 14-02.3-02 should be interpreted to apply only to situations "in which the referring person takes an active role in directing the referred person to see a particular physician or clinic, and particularly in the arranging of the appointment, discussing of medical data, etc." Under their construction of the statute, "furnishing a list of the names of physicians or clinics which do abortions, should not in and of itself be considered a violation of the act, and would not result in reduction or termination of federal funds administered by" the State Department of Health.

The type of abstention urged by defendants was established by the decision in *Railroad Commission v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention is appropriate under the *Pullman* doctrine "where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Bellotti v. Baird,* 428 U.S. 132, 147, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976), *quoting Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

In this case there does not appear to be a reasonable likelihood that the state court would adopt the construction offered by defendants. *See Zbaraz v. Quern,* 572 F.2d 582, 584 (7th Cir. 1978). The plain meaning of the word "refer" does not logically permit distinction between providing the name of one particular abortion provider and providing a list of names of abortion providers from which a patient may make her own selection. There is a difference only in degree of specificity of the information. Defendants stated belief that an active role by the referring person or agency should be required before a violation of the statute would occur more closely approximates a definition of "encourage" than of "refer."

Further, adoption of the limited construction would not materially alter the statutory claims of the patients plaintiffs represent of a right to receive information on abortion. The court holds that abstention under the *Pullman* doctrine would be inappropriate in this case.

■ Defendants also urge the court to abstain under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Under that doctrine, a federal court should refrain, for reasons of equity, comity and federalism, from enjoining state

---

1. One part of plaintiffs' challenge is that the words "encourage" and "refer" are vague and overbroad and thus violate the Due Process Clause of the Fourteenth Amendment.

2. Plaintiffs have standing to assert the rights of Valley Family Planning's patients. *See Carey v. Population Services International,* 431 U.S. 678, 682-684, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

criminal prosecutions except in extraordinary circumstances. Defendants contend that because plaintiffs have alleged no genuine threat of prosecution, they cannot demonstrate the "great and immediate" irreparable harm which is a prerequisite to enjoining state officials from instituting criminal proceedings. *Id.* at 45, *quoting Fenner v. Boykin,* 271 U.S. 240, 243–244, 46 S.Ct. 492, 70 L.Ed. 927 (1926).

Because plaintiffs allege they are being required by N.D.Cent.Code § 14–02.3–02 to forego activities protected by the First Amendment, they may well have established great and immediate irreparable harm, *see Steffel v. Thompson,* 415 U.S. 452, 463 n.12, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), but there is no need to decide this question. Plaintiffs' challenge is primarily directed to N.D.Cent.Code § 14–02.3–02's withdrawal of public funding for any person or agencies who engage in the proscribed activities. At least with respect to plaintiffs' statutory claims, the criminal penalties which may be imposed for violation of N.D.Cent.Code § 14–02.3–02 are only incidental to their challenge. Because a federal court should not decide "federal constitutional questions where a dispositive nonconstitutional ground is available," *Hagans v. Lavine,* 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974), the criminal aspect of the statute may never become an issue in this case. Therefore, the court concludes abstention under the *Younger v. Harris* doctrine is inappropriate in this case.

## II. STANDARD FOR PRELIMINARY INJUNCTION.

The standard for issuance of a preliminary injunction in the Eighth Circuit, as enunciated in *Fennell v. Butler,* 570 F.2d 263, 264 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978), is:

A preliminary injunction should issue upon a clear showing of either (1) probable success on the merits *and* possible

irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of the hardships tipping decidedly toward the party requesting the preliminary relief.

### A. Injury.

■ Defendants have shown by affidavit that subsequent to the effective date of N.D.Cent.Code § 14–02.3–02, officials of the Department of Health, Education and Welfare (HEW) conducted an on-site inspection of Valley Family Planning's operation and have given no indication that it is not in compliance with federal requirements and guidelines. Defendants contend that because Valley Family Planning is in no danger of losing its funding, plaintiffs will suffer no irreparable injury.

Although Valley Family Planning's funding may not be terminated, its employees' constitutionally protected rights of free speech have been burdened through the conforming of Valley Family Planning's operation to assure compliance with N.D.Cent. Code § 14–02.3–02.

Further, because of Valley Family Planning's compliance with N.D.Cent.Code § 14–02.3–02, its patients are being denied their claimed statutory right to abortion information and referrals.

The court holds plaintiffs have established the requisite possible irreparable injury, and have also established the alternative requirement of a balance of the hardships tipping decidedly in their favor.

### B. Merits.

■ Valley Family Planning receives federal funds under Title X of the Public Health Service Act and Title V of the Social Security Act, and plaintiffs allege that N.D. Cent.Code § 14–02.3–02 is inconsistent with the objectives of both of those programs.[3]

A state is not required to participate in federal-state cooperative public assistance

---

**3.** Unless or until this case is certified as a class action, the court will not consider the claims that N.D.Cent.Code § 14–02.3–02 conflicts with

Titles IV, XIX and XX of the Social Security Act.

programs, but when it voluntarily chooses to do so it incurs an obligation to administer program funds in a manner that is consistent with federal statutory guidelines and administrative regulations and interpretive opinions. *See King v. Smith,* 392 U.S. 309, 316–317, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *T___ H___ v. Jones,* 425 F.Supp. 873–877 (D.Utah 1975) (3 judge court), *aff'd,* 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811 (1976).

Title X of the Public Health Service Act, 42 U.S.C. § 300 et seq., entitled "Population Research and Voluntary Family Planning Programs," authorizes the Secretary of HEW to make grants and enter into contracts with public and non-profit private agencies for the establishment and operation of family planning projects. Section 1008 of the Act, 42 U.S.C. § 300a–6, provides: "None of the funds appropriated under this subchapter shall be used in programs where abortion is a method of family planning."

Among the "core services" which must be provided by each Title X grantee are "pregnancy testing, maternity counseling, and referral services," 42 U.S.C. § 300a–22(4)(A), and "referral to other appropriate health services." 42 U.S.C. § 300a–22(4)(J). HEW regulations provide that each application for Title X funds must include "provision for medical services related to family planning including . . . necessary referral to other medical services when medically indicated," 42 C.F.R. § 59.5(a)(9)(d); "provision for social services related to family planning counseling, [and] referral to and from other social and medical services agencies," 42 C.F.R. § 59.5(a)(9)(e); and "provision for coordination and use of referral arrangements with other providers of health care services, with local health and welfare departments, hospitals, and voluntary agencies, and health service projects supported by other Federal programs." 42 C.F.R. § 59.5(a)(9)(i).

An interpretive opinion by HEW indicates that although Title X funds may not be used to perform or promote abortions, referrals are not proscribed and in fact should be provided. This policy guideline issued by the agency charged with administration of public assistance programs, including Title X, is entitled to great weight. *See Rosado v. Wyman,* 397 U.S. 397, 407, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King v. Smith,* 392 U.S. at 317, 88 S.Ct. 2128.

The court holds plaintiffs have made a clear showing of probable success on the merits of their claim that N.D.Cent.Code § 14–02.3–02 conflicts with the objectives of Title X of the Public Health Service Act.

Title V of the Social Security Act, 42 U.S.C. § 701 et seq., entitled "Maternal and Child Health and Crippled Children's Services," provides funds for family planning among other services to states whose plans have been approved by HEW. Among the factors to be taken into consideration by HEW in determining whether a program meets the objectives of Title V are the degree to which it provides for "counseling and interpretation to individuals of the services offered by the project, and public education and information services," 42 C.F.R. § 51a.130(b)(1), and "arrangements which may include payment, for the provision of family planning services for those persons eligible for treatment services within the area served by the program of projects for whom the program or [sic] projects cannot provide such services." 42 C.F.R. § 51a.130(b)(7).

A directive issued by HEW concerning use of Title V funds states that such funds may be used for the performance of abortions only in cases with documented medical indications, and only when other funds are not available, but each project should make available to its patients a list of acceptable counseling services and abortion providers, as it would for any other medical service not provided by the project.

The court holds plaintiffs have made a clear showing of probable success on the merits of their claim that N.D.Cent.Code § 14–02.3–02 is inconsistent with the objectives of Title V of the Social Security Act.

Because plaintiffs' constitutional claims will be decided only if their statutory claims are not dispositive, the court will not dis-

cuss the likelihood of success on the merits of the constitutional claims. However, the court holds plaintiffs have presented sufficiently serious constitutional questions, particularly with respect to the First Amendment to make them a fair ground for litigation.

Thus, the court concludes plaintiffs' motion for a preliminary injunction should be granted. Because Valley Family Planning has never performed abortions and does not seek to represent in this case any person or agency that does perform abortions, the court will not enjoin enforcement of that portion of N.D.Cent.Code § 14–02.3–02 which prohibits the use of public funds as family planning funds by anyone who performs abortions. Valley Family Planning also alleges it has never encouraged abortions, but because it attacks the vagueness of that term and because the ambiguity of the term presents a considerable question whether a referral or the supplying of other information about abortion might be viewed as encouragement of abortion, the court will enjoin enforcement of N.D.Cent. Code § 14–02.3–02 insofar as it applies to encouragement as well as referral.

### III. ORDER FOR PRELIMINARY INJUNCTION.

IT IS ORDERED defendants, their successors, their agents or employees and those in active concert or participation with them are preliminarily enjoined and restrained, until the further order of this court, from enforcing or otherwise applying N.D.Cent. Code § 14–02.3–02 as against any person, public or private agency which refers or encourages abortion. In the exercise of the court's discretion, Rule 65(c) security is not required.